**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQ.
PA Attorney ID: 319524
NJ Attorney ID: 125782014
1628 Pine Street
Philadelphia, PA 19103
Phone: 215-391-4790
Fax: 215-893-5288
Email: tim@dereksmithlaw.com
*Attorneys for Plaintiff, John Githens*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN GITHENS | : | |
| | : | |
| Plaintiff | : | Case No. _____ |
| | : | |
| v. | : | |
| | : | |
| NEW JERSEY TRANSIT | : | |
| CORPORATION and | : | JURY TRIAL DEMANDED |
| DANA TIRADO (individually) | : | |
| | : | |
| Defendants | : | |
| | : | |

Plaintiff, John Githens, by and through undersigned counsel, hereby files this Civil Action Complaint against Defendants New Jersey Transit Corporation and Dana Tirado (collectively "Defendants") and avers the following:

## NATURE OF THE CASE

1.   Plaintiff complains pursuant to Family Medical Leave Act "FMLA", 29 USCA 2601 et. seq.; Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112 § 12203; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; New Jersey Conscientious Employee Protection

Act (CEPA) N.J.S.A. §§ 34:19-1 et seq.; New Jersey Law Against Discrimination (NJLAD) N.J.S.A. 10:5-1 et. seq.; and Common Law and seeks damages as well as Declaratory and Injunctive relief to redress the injuries Plaintiff has suffered as a result of being subject to discrimination, retaliation, and wrongful termination by the aforementioned Defendants.

2.    Furthermore, this action is to redress the Defendants' unlawful employment practices against Plaintiff, including Defendants' unlawful discrimination against Plaintiff because of his disability and for Defendants' wrongful actions against Plaintiff leading up to, and including, his unlawful termination.

3.    Plaintiff seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement of attorneys' fees, litigation costs, and pre- and post- judgment interest as remedies for Defendants' violations of his rights.

## **PARTIES**

4.    Plaintiff, John Githens (hereinafter referred to as "Plaintiff") is a male individual who resides in the State of New Jersey.

5.    At all times material, New Jersey Transit Corporation (hereinafter referred to as "Defendant NJ Transit") operates a principal place of business located at 1 Penn Plaza East, Newark, New Jersey 08103.

6.    At all times material, Defendant NJ Transit operates a station located at 1431 Doughty Road, Egg Harbor Township, New Jersey 08234.

7.    At all times material, Defendant Dana Tirado (hereinafter referred to as "Defendant Tirado") was and is employed at Defendant NJ Transit as a Garage Supervisor at the 1431 Doughty Road, Egg Harbor Township, New Jersey 08234 location.

8.    At all times material, Defendant Tirado had supervisory authority over Plaintiff and possessed the authority to directly and materially impact the terms and conditions of Plaintiff's employment.

## JURISDICTION, VENUE, AND NON-JURISDICTIONAL PRESCRIPTIONS

9.    This Court has subject matter jurisdiction over this matter as it involves a Federal Question, 28 U.S.C. §1331, and the Court maintains supplemental jurisdiction, 28 U.S.C. §1367, over the New Jersey State Law causes of action.

10. Venue is appropriate before this Court as all parties reside in the District of New Jersey and all actions and omissions giving rise to this litigation occurred in the district of New Jersey.

11. Furthermore, Plaintiff has adequately satisfied non-Jurisdictional Prescriptions to bring these employment discrimination claims as he exhausted administrative remedies by having filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission under all relevant causes of action and the and Plaintiff having received a Notice of Right to Sue.

## MATERIAL FACTS

12.   Plaintiff has experienced sexual and physical harassment for a sustained and ongoing period of time from bus patrons along his assigned route.

13. By way of example, one bus patron attempted to use hair spray to set Plaintiff on fire.

14. By way of further example, same bus patron would spray Plaintiff in the face with perfume.

15. By way of further example, same bus patron told Plaintiff to "fuck [her] in the ass without a condom."

16. By way of further example, and by no means an exhaustive list, the same bus patron would ask to "suck [his] dick" and when Plaintiff declined she began verbally abusing Plaintiff and yelling the n-word at other bus patrons.

17. Plaintiff had reported the incidents over two dozen times from 2015 through 2024, but Defendants declined to take any action to keep Plaintiff or other bus patrons safe.

18. In fact, until around 2020, there were no records of Plaintiff's reports taken, however, Plaintiff's complaints regarding the harassment and dangerous working conditions were recorded by Defendant NJ Transit from about 2020 moving forward.

19. The stress from the sexual harassment and threatening behavior led to long-term health issues for Plaintiff, including anxiety, stress, emotional pain, and he was also diagnosed with Irritable Bowel Syndrome (IBS), which detrimentally impacted his work and life activities.

20. IBS and anxiety are interrelated and interconnected in terms of symptoms and causes. See https://www.webmd.com/ibs/stress-anxiety-ibs.

21. Plaintiff's IBS and related anxiety coincided with the lack of responsiveness to his complaints regarding the sexual harassment and dangerous environment created by specific bus patrons which regularly rode Plaintiff's bus and which Plaintiff regularly reported to Defendant NJ Transit.

22. Flare-ups of the IBS occurred at irregular times, and Plaintiff was unable to work during IBS flareups.

23. Plaintiff applied for intermittent FMLA in 2017 and it was approved.

24. In October 2023, Plaintiff filed an official complaint with the New Jersey Department of Labor (NJDOL) due to the complete lack of response to his numerous complaints and reports of the sexually harassing and dangerous behavior of specific bus patrons on his assigned route which created a dangerous and hostile work environment for Plaintiff and also a dangerous unsafe condition for bus patrons.

25. Plaintiff had a reasonable belief that Defendant NJ Transit's failure to address his complaints regarding sexual harassment, threats of violence, threats of sexual violence, and other dangerous conditions created by bus patrons violated the law, rules, and public policy.

26. About January, 2024, after Defendant NJ Transit was informed of Plaintiff's good-faith report of wrongdoing and/or unlawful activity at NJ Transit to NJDOL, Plaintiff began receiving inappropriate and retaliatory disciplinary write-ups as a pretext for retaliation and also received retaliatory interference with his approved and appropriate FMLA leave.

27. From December 2023 to January 2024, Plaintiff utilized his intermittent FMLA seven (7) times.

28. Plaintiff then, about February, 2024 received a write-up for excessive absenteeism from Defendant Tirado, even though each time he was using his approved intermittent FMLA.

29.  Plaintiff asked his Union representative, Gene Castor, to sign off on his write-up.

30. Upon information and belief, when Gene Castor went to Defendant Tirado, she told Mr. Castor that Plaintiff had never used his FMLA when he called out.

31. Similar instances of misclassifying of Plaintiff's FMLA time, mistakes with his hours, and other retaliation continued through February, 2024 and into March, 2024.

32. This was untrue as Plaintiff had called out using the procedures he had previously used with being retaliated against.

33. Defendant Tirado's actions constituted retaliation because Plaintiff had reported to the Department of Labor and because Plaintiff was using his FMLA time.

34. Defendant Tirado told other employees that Plaintiff was using his FMLA fraudulently and that he did not even have a disability.

35. This was untrue, as Plaintiff was diagnosed with Irritable Bowel Syndrome and in February 2024 was advised by his doctors that he also had non-alcoholic cirrhosis of the liver. Additionally he was advised that his pancreas was only operating at 40% due to a non-functioning gall bladder.

36. Defendant Tirado printed out an email detailing Plaintiff's usage of FMLA time and circulated around the office, a violation of his privacy, and continued purporting the false narrative that Plaintiff was using his FMLA fraudulently.

37. Defendant Tirado still maintained that Plaintiff was not utilizing his FMLA, but his union representatives continually advised her that it didn't matter because per FMLA guidelines, once Plaintiff was out of sick time, all time he took off was considered FMLA.

38. In March, 2024, Petitioner and his wife, Marilyn Githens, were contacted by New Jersey Transit employee Brent Moses.

39. Brent Moses advised that he and his wife, Nicole Moses, had gone to lunch with Defendant Tirado.

40. At lunch, Defendant Tirado told the Moses that Petitioner's wife, Ms. Githens, was a "dead fuck" who couldn't sexually satisfy Petitioner and couldn't provide him with children.

41. Moreover, Defendant Tirado accused Petitioner of going to massage parlors to "get off" because Ms. Githens couldn't sexually satisfy Petitioner.

42. By way of further example, and by no means an exhaustive list, Defendant Tirado further said that Plaintiff's wife "wasn't worth fucking because she can't produce children."

43. By way of further example, Defendant Tirado stated that her boss, Director Jennifer Piccoli was a "dick-sucker" but went on to say, "I do it too, but I do it better."

44. Both Brent Moses and Nicole Moses made reports to the EEO Department at Defendant NJ Transit but nothing came of the report.

45. Defendant Tirado frequently would make overt and inappropriate sexual comments in the workplace.

46. A measure of Defendant Tirado's animosity towards Petitioner is that he had previously rejected her sexual advances.

47. Upon information and belief, Defendant Tirado became upset when Petitioner began dating, and subsequently married, his wife Marilyn Githens.

48. When Petitioner married his wife in December 2018, Defendant Tirado stopped speaking with and acknowledging Petitioner, even though they worked together.

49. Defendant Tirado stopped speaking with Petitioner for three (3) years.

50. All of this goes to show how Defendant Tirado creates a hostile and unprofessional work place that fostered discrimination against Petitioner.

51. The discrimination and hostile work environment was perpetual and Petitioner was continually written up for reporting bus patrons who jeopardize Petitioner's and the other bus patrons' safety.

52. Plaintiff reported the discrimination, FMLA issues, and sexually harassing comments made by Defendant Tirado to NJ Transit's Ethics department and EEO department about March, 2024.

53. Plaintiff also requested a second step hearing for his write-up of excessive absenteeism.

54. At the second step hearing, Defendant Tirado was belligerent and continually alleged that Plaintiff's FMLA usage was fraudulent, but Plaintiff had already obtained approval which was supported by documentation from his medical provider.

55. Plaintiff's write-up for excessive absenteeism was dismissed at the second step hearing by Director of Transportation for NJ Transit's Southern Division, Jennifer Piccoli.

56. Since Defendant Tirado had alleged that Plaintiff was not calling out under FMLA, Plaintiff began sending emails to both Defendant Tirado and Director Piccoli to ensure that they were on notice that he was calling out with his FMLA.

57. Director Piccoli followed up Plaintiff's email advising that she did not want him do email her about this because she "did not have time" to hear about it.

58. Defendant Tirado said Plaintiff's emails were in violation of the contract and company policy, but per the company handbook this was untrue.

59. NJ Transit's Ethics department and EEO Department conducted an investigation into Plaintiff's complaint of Defendant Tirado's sexually harassing comments about May, 2024 and the results were not finalized until December 31, 2024.

60. The report issued by NJ Transit's EEO Department on December 31, 2024 found that Defendant Tirado subjected Plaintiff to sexual harassment when she disclosed personal information of a sexual nature about him to her coworkers during an off-site visit on December 11, 2023.

61. The report issued by NJ Transit's EEO Department on December 31, 2024 found that Defendant Tirado subjected him to harassment based on a disability when she disclosed his disability status to Plaintiff's coworkers during an off-site visit on December 11, 2023.

62. The report issued by NJ Transit's EEO Department on December 31, 2024 further indicated that Defendant Tirado violated NJ Transit Policy 6.01 which prohibits retaliation against any employee who alleges that he/she/they were the victim of discrimination or harassment, provides information in the course of an investigation into claims of discrimination or harassment, or opposes a discriminatory practice.

63. In May 2024, Defendant Tirado called the ethics department for Defendants and alleged that Plaintiff was calling out via text messages, which was against the FMLA guidelines.

64. This was untrue. Plaintiff had called out using the phone number provided per guidelines.

65. Meanwhile, Plaintiff's case with the Department of Labor was still under investigation.

66. Additionally, Plaintiff was receiving write-ups for "conduct unbecoming" for continually reporting the sexual and physical harassment he was continually facing from bus patrons on a sustained and ongoing basis.

67. About September 2, 2024 Plaintiff was again written up related to his complaints of the bus patron who had been sexually harassing him and threatening him since 2015.

68. On September 6, 2024, Plaintiff was unlawfully terminated from his position as a bus driver for Defendant NJ Transit and the final hearing where his termination was upheld occurred about September 24, 2024.

69. Plaintiff's termination was instituted and finalized while his EEO complaint regarding sexual harassment and FMLA-related issues, as well as his DOL report of unlawful violative conduct and issues at NJ Transit were still under investigation.

70. Plaintiff's Union declined to vote to send his matter to arbitration and thus the local hearing, which the State of New Jersey recognizes as inherently biased against employees, (*see Unemployed-Employed Council of New Jersey, Inc. v. Horn*, 85 N.J. 646, 650, 428 A.2d 1305 (1981); *New Jersey Civ. Serv. Ass'n v. State*, 88 N.J. 605, 608–09, 443 A.2d 1070, 1071 (1982)), therefore the biased local hearing results terminating Plaintiff went unchallenged and did not receive the benefit of an arbitrator's adjudication or review.

71. The pretextual reason for termination was that Petitioner had made a false report.

72. Petitioner's termination by Defendant NJ Transit was unlawful and retaliatory.

73. As a result of Defendants' actions, Petitioner felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

74. As a result of the acts and conduct complained of herein, Petitioner has suffered and the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Petitioner also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Petitioner has further experienced severe emotional and physical distress.

75. That as a result of Defendants' conduct, the Petitioner was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

76. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Petitioner demands Punitive Damages against all the Defendants jointly and severally.

77. Petitioner further claims aggravation, activation and/or exacerbation of any preexisting condition.

78. Petitioner claims that Defendants unlawfully discriminated against Petitioner because of his gender, disability, reports of harassment and discrimination, engaging in protected activities, and because he opposed the unlawful conduct of Defendants related to the above protected classes.

79. The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Petitioner to on a continuous and on-going basis throughout Petitioner's employment.

80. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

81. Petitioner claims alternatively that Petitioner is an Independent Contractor, and Petitioner makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Petitioner claims that Defendant owed and breached its duty to Petitioner to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

82. Petitioner claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

## CAUSES OF ACTION

### COUNT I
### Interference in violation of the FMLA
### Family Medical Leave Act "FMLA", 29 USCA 2601 et. seq.
### *(Plaintiff v. All Defendants)*

83.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

84.    Defendant NJ Transit is a covered employer under the FMLA as it is engaged in commerce and/or in an industry or activity affecting commerce and employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

85.    Alternatively, Defendant is a covered employer because it employs 50 or more employees within a 75-mile range of the worksite, for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

86.    Defendant NJ Transit administered Plaintiff's FMLA leave and thus is an employer and/or otherwise responsible for Defendant's compliance with FMLA and federally protected rights.

87.    Defendant Tirado engaged directly in discrimination and interference with Plaintiff's FMLA rights.

88.    Plaintiff was eligible for FMLA because Plaintiff had worked for Defendant NJ Transit for 12 or more months and had worked more than 1250 hours in the preceding year.

89.    Plaintiff was eligible for FMLA because Plaintiff had a serious health condition, which required Pleintiff to miss three consecutive days of work and/or required ongoing treatment from a medical professional.

90.    Plaintiff put Defendants on notice of Plaintiff's need for FMLA leave by having requested FMLA leave and requested forms as early as 2017, and had been approved for FMLA leave.

91.    "In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." *Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 335 (E.D. Pa. 2015) (quoting *Sarnowski*, 510 F.3d at 401)); see *Wright v. Shore Memorial Hosp*., Civil No. 11-5583 (JBS/AMD), 2013 U.S. Dist. LEXIS 164264, 2013 WL 6080072, at *7 (D.N.J. Nov. 19, 2013) (explaining that "Courts in this Circuit have held that if [the] employers' actions would 'chill' or 'inhibit' the employees from exercising FMLA rights, a claim for interference may arise" and noting that a "jury could reasonably find that Defendant misinformed [the plaintiff] that she had no FMLA eligibility after February 2011 . . . and that such misinformation was interference with her FMLA rights"); *Rashid v. Sovereign Bancorp, Inc*., Civil Action No. 07-1056, 2008 U.S. Dist. LEXIS 47688, 2008 WL 2485450, at *6 (E.D. Pa. June 19, 2008) ("Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." (quotation marks omitted)).

92.    Defendants interfered with Plaintiff's FMLA rights as (1) Plaintiff was eligible for benefits under the FMLA, (2) Defendants is/are an employer, (3) Plaintiff was entitled to leave under the FMLA, (4) Plaintiff gave Defendants notice of Plaintiff's need for leave, and (5) the Defendants denied Plaintiff FMLA leave and interfered with same.

93.    Defendants violated FMLA rules and deliberately obstructed Plaintiff's right and ability to take FMLA leave, which constituted an interference.

94.    The acts mentioned above were willful, wanton, malicious, reckless, oppressive, and justify the award of liquidated damages.

95.    As a direct and proximate result of Defendants' interference and wrongful termination of Plaintiff, Plaintiff has been deprived economic benefits including, but not limited to, lost wages, lost back pay, lost front pay, medical bills, and out-of-pocket expenses.

96.    Plaintiff demands favorable judgment against Defendants for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendants and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

97.    In terminating Plaintiff, Defendants considered Plaintiff's FMLA leave of absence eligibility under the FMLA and thus under mixed-motive, Plaintiff is entitled to attorney's fees.

98.    Plaintiff seeks re-employment as a form of relief under the FMLA.

**COUNT II**
**Retaliation in violation of FMLA**
**Family Medical Leave Act "FMLA", 29 USCA 2601 et. seq.**
*(Plaintiff v. All Defendants)*

99. Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

100.    Defendants retaliated against Plaintiff in violation of the FMLA as (1) Plaintiff was eligible and took FMLA leave, (2) Plaintiff suffered adverse employment decision(s), and (3) the adverse decision(s) was/were casually related to Plaintiff's leave.

101.    Plaintiff requested FMLA paperwork, information, and leave and was approved for same since 2017.

102.    Plaintiff had been approved for FMLA leave, but Defendants chose to issue discipline, write-ups, and ultimately to terminate Plaintiff nonetheless.

103.    Thus, Defendants retaliated against Plaintiff for taking and/or having been approved for FMLA leave.

104.    The temporal proximity of Plaintiff's approval and use of FMLA and the termination are unusually suggestive of retaliation and raise a presumption that Plaintiff's termination was/were casually related to Plaintiff's leave.

105.    The acts mentioned above were willful, wanton, malicious, reckless, oppressive, and justify the award of liquidated damages.

106.    As a direct and proximate result of Defendants' retaliation, Plaintiff has been deprived of economic benefits including, but not limited to, lost wages, lost back pay, lost front pay, medical bills, and out-of-pocket expenses.

107.    Plaintiff demands favorable judgment against Defendants for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendants and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

108.     In terminating Plaintiff, Defendants considered his leave of absence under the FMLA and thus under mixed-motive, Plaintiff is entitled to attorney's fees.

109.     Plaintiff seeks re-employment as a form of relief under the FMLA.

**COUNT III**
**Disability Discrimination in Violation of The**
**Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112**
*(Plaintiff v. Defendant NJ Transit)*

110.     Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

111.     The ADA prohibits discrimination on the basis of a disability, and provides:

**(a) General rule**

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

112.     At all times material, Defendant NJ Transit was a covered entity subject to the requirements of the ADA.

113.     At all times material, Plaintiff was a qualified individual with a disability entitled to the protections of the ADA.

114.     At all times material, Defendant NJ Transit had actual knowledge of Plaintiff's status as a qualified individual with a disability entitled to the protections of the ADA.

115.     Defendant NJ Transit terminated Plaintiff's employment on September 6, 2024.

116.     At all times material, Plaintiff's disability status was the motivating and/or determinative factor in Defendants' decision to terminate Plaintiff's employment.

117.     Defendants' decision to terminate Plaintiff because of Plaintiff's disability status was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

118.     Defendants' decision to terminate Plaintiff's employment because of Plaintiff's disability is an unlawful employment practice in violation of the ADA.

119.     As a direct and proximate result of Defendants' unlawful termination of Plaintiff's employment in violation of ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT IV
### Failure to Provide Reasonable Accommodations in Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112
*(Plaintiff v. Defendant NJ Transit)*

120.     Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

121.     Under the ADA, an employer discriminates against an individual on the basis of disability when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the] entity." 42 U.S.C. § 12112(b)(5)(A).

122.     The Third Circuit has held that good faith participation in an "interactive process" with the employee is an important factor in determining whether a reasonable accommodation exists. The Court in *Williams v. Philadelphia Haus. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004) explained the interactive process, explaining:

> i.  [W]e have repeatedly held that an employer has a duty under the ADA to engage in an "interactive process" of communication with

16

> an employee requesting an accommodation so that the employer will be able to ascertain whether there is in fact a disability and, if so, the extent thereof, and thereafter be able to assist in identifying reasonable accommodations where appropriate.

123.    At all times material, Defendant was a covered entity subject to the requirements of the ADA.

124.    At all times material, Defendant had actual knowledge of Plaintiff's status as a qualified individual with a disability entitled to the protections of the ADA.

125.    Specifically, Plaintiff's disability is a medical condition that qualifies as a disability within the meaning of the ADA.

126.    At all times material, Defendant had actual knowledge of Plaintiff's status as a qualified individual with a disability entitled to the protections of the ADA.

127.    Plaintiff made express requests to Defendant for reasonable accommodations, by seeking to continue to use his approved FMLA time without harassment or interference and even contacted Director Piccoli and was actively discouraged and prohibited from attempting to ensure that his FMLA leave related to his disability was not interfered with and that he did not receive retaliation for exercising his rights.

128.    At all times material, Defendants had a duty under the ADA to engage in the interactive process to determine whether Plaintiff's disability could be reasonably accommodated without undue hardship.

129.    At all times material, Plaintiff made good-faith efforts to engage Defendants in the interactive process.

130.    Defendants failed to engage in the interactive process and/or provide Plaintiff with reasonable accommodations in violation of the ADA.

131.     At all times material, Defendants could have provided Plaintiff with reasonable accommodations for his disability without undue hardship.

132.     Defendants terminated Plaintiff's employment about September 6, 2024.

133.     Defendants' failure to provide Plaintiff with reasonable accommodations for his disabilities was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

134.     Defendant's failure to provide Plaintiff with reasonable accommodations for his disabilities is an unlawful employment practice in violation of the ADA.

135.     As a direct and proximate result of Defendant's failure to provide Plaintiff with reasonable accommodations in violation of ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.

**COUNT V**
**Retaliation in Violation of the**
**Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a)**
*(Plaintiff v. Defendant NJ Transit)*

136.     Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

137.     Section 503 of the ADA prohibits retaliation, and provides:

   a.  **Retaliation**

       No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the chapter.

       42 U.S.C. § 12203(a).

138.     Plaintiff engaged protected activity under the ADA when he opposed the write-ups he was given for excessive absenteeism related to both his FMLA leave and to his disability.

139.    Plaintiff reported his opposition to this retaliatory activity to management of Defendant NJ Transit and was discouraged from emailing management to confirm his disability leave in the future.

140.    Plaintiff's prior protected activity and/or opposition to Defendant's unlawful employment practices was the motivating and/or determinative factor in Defendant's decision to terminate Plaintiff's employment about September 6, 2024.

141.    The temporal proximity between Plaintiff's protected activity and Defendant's decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

142.    Defendant's decision to terminate Plaintiff in retaliation for Plaintiff's prior protected activity and/or opposition to Defendant's unlawful employment practices, was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

143.    Defendant's decision to terminate Plaintiff's employment in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of the ADA.

144.    As a direct and proximate result of Defendant's retaliatory termination of Plaintiff's employment in violation of ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT VI
### Unlawful Interference in Violation of the
### Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(b)
*(Plaintiff v. Defendant NJ Transit)*

145.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

146.     Section 503 of the ADA prohibits interference, coercion, and intimidation, and provides:

> **(b) Interference, coercion, or intimidation**
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.
>
> 42 U.S.C. § 12203(b).

147.     At all times material, Plaintiff was a qualified individual with a disability entitled to the protections of the ADA.

148.     At all times material, Defendant had actual knowledge of Plaintiff's status as a qualified individual with a disability entitled to the protections of the ADA.

149.     Plaintiff made express requests to Defendant for reasonable accommodations for Plaintiff's disability, namely being free from discrimination and retaliation while taking approved FMLA time based on his disability.

150.     Defendant's actions to hamper Plaintiff in the exercise of his rights under the Act and to shirk its duties to Plaintiff under the ADA as alleged in this Complaint constitute unlawful interference in violation of the ADA.

151.     As a direct and proximate result of Defendant's unlawful interference in violation of ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.

### COUNT VII
### Sex Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
### (*Plaintiff v. Defendant NJ Transit*)

152.     Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

153.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

> "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2.

154.     Title VII Liability exists against employers for the sexual harassment, or in this case the sexual assault, of employees by non-employees. 29 C.F.R. § 1604.11(e). *See also Graves v. County of Dauphin*, 98 F. Supp. 2d 613, 620 (M.D. Pa. 2000); *Zupan v. Illinois*, No. Civ. A. 95 C 1302, 1999 U.S. Dist. LEXIS 7776, 1999 WL 281344, at *4 (N.D. Ill. Mar. 31, 1999); *Mongelli v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 491 F. Supp. 2d 467, 476 (D. Del. 2007).

155.     At all times material, Plaintiff's sex was and is male.

156.     At all times material, Defendant had actual or constructive knowledge of Plaintiff's sex.

157.     At all times material, Defendant NJ Transit and Defendant Tirado held supervisory authority over Plaintiff with respect to the terms and conditions of Plaintiff's employment.

158.     At all times material, Defendant authorized the individuals enumerated above, including Defendant Tirado, to take tangible employment actions against Plaintiff and failed to prevent continual severe sexual harassment of bus patrons, which Plaintiff complained of on an ongoing and sustained basis since 2015 through his termination in September, 2024 and Defendant Tirado made sexually harassing comments regarding Plaintiff as complained of not only by

Plaintiff but as found by Defendant NJ Transit's own EEO Department on December 31, 2024, months after Plaintiff had already been unlawfully terminated by Defendants.

159.    Defendant NJ Transit subjected Plaintiff to disparate treatment in the terms of conditions of Plaintiff's employment because of Plaintiff's sex from bus patrons and permitted Defendant Tirado's sexually harassing discriminatory comments and conduct against Plaintiff.

160.    At all times material, Plaintiff's sex was the motivating and/or determinative factor in Defendant's disparate treatment of Plaintiff and decision to discriminate against Plaintiff.

161.    At all times material, Defendant's discriminatory conduct, including that of manager Defendant Tirado and the lack of action regarding Plaintiff's complaints of  sexual harassment by NJ Transit bus passengers was not welcomed by Plaintiff.

162.    Defendant's discrimination because of Plaintiff's sex was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights and Plaintiff's safety.

163.    Defendant's discrimination against Plaintiff because of Plaintiff's sex is an unlawful employment practice in violation of Title VII.

164.    Defendants acted upon a continuing course of conduct.

165.    As a direct and proximate result of Defendants' discrimination against Plaintiff in violation of Title VII because of Plaintiff's sex, Plaintiff has suffered and continues to suffer emotional and financial harm.

### COUNT VIII
### Hostile Work Environment in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
#### (*Plaintiff v. Defendant NJ Transit*)

166.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

167.    To state a claim for hostile work environment, a plaintiff must show: (1) he "suffered intentional discrimination" because of [his membership in a protected class]; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected the plaintiff"; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances"; and (5) "the existence of respondeat superior liability, meaning the employer is responsible." *Fields v. Am. Airlines, Inc.*, 2023 U.S. Dist. LEXIS 177444, *84 *citing Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 411 (D.N.J. 2003).

168.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

169.    At all times material, Defendant's intentional, willful discrimination based on Plaintiff's sex was not welcomed by Plaintiff.

170.    At all times material, the intentional, discrimination based on Plaintiff's sex by Defendant was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

171.    At all times material, Plaintiff believed Plaintiff's work environment to be hostile or abusive as a result of Defendant's discriminatory conduct on the basis of Plaintiff's sex.

172.    The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

173.    Defendant provided a futile avenue for complaint.

174.    Defendant acted upon a continuing course of conduct.

175.     Defendant's unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

176.     As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT IX
### Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
### *(Plaintiff v. Defendant NJ Transit)*

177.     Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

178.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

179.     As alleged herein, Plaintiff engaged in protected activity under Title VII including, but not limited to complaining about being sexually harassed by bus patrons and by his supervisor Defendant Tirado.

180.     At all times material, Plaintiff acted under a reasonable, good-faith belief that Plaintiff's right to be free from discrimination in the workplace was being violated by Defendant's conduct.

181.    Defendant subjected Plaintiff to materially adverse employment actions subsequent to Plaintiff engaging protected conduct, culminating in Defendant's termination of Plaintiff's employment on about September 6, 2024.

182.    At all times material, Plaintiff's protected activity was the determinative factor in some or all of Defendant's materially adverse actions against Plaintiff.

183.    At all times material, Plaintiff's protected activity was the but-for cause of some or all of Defendant's materially adverse actions against Plaintiff.

184.    The temporal proximity between Plaintiff's protected activity and Defendant's decision to take materially adverse action against Plaintiff is blatantly suggestive of a retaliatory motive and gives rise to an inference of causation.

185.    Defendant's materially adverse actions against Plaintiff in retaliation for Plaintiff's protected activity were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

186.    Defendant's actions to take materially adverse employment actions against Plaintiff in retaliation for Plaintiff's protected activity are unlawful employment practices in violation of Title VII.

187.    Defendant is vicariously liable for the unlawful actions of its employees or agents against Plaintiff in the course and scope of their employment with Defendant.

188.    As a direct and proximate result of Defendant's retaliation and unlawful termination of Plaintiff's employment in violation of Title VII's prohibition against retaliation for engaging in the protected activity, Plaintiff has suffered and continues to suffer emotional and financial harm including loss of wages including loss of back pay, loss of front pay, loss of amenities of

employment, out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

189.    Defendant's actions were willful and wanton and thus require the imposition of punitive damages to the extent permissible by law.

190.    Alternatively, Defendants' actions were motivated by the foregoing discrimination and retaliation and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

**COUNT X**
**Whistleblower Retaliation in violation of the**
**New Jersey Conscientious Employee Protection Act (CEPA)**
**N.J.S.A. §§ 34:19-1 et seq.**
*(Plaintiff v. All Defendants)*

191.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

192.    CEPA prohibits an employer from retaliating against an employee because the employee does any of the following:

Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes (1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, in the case of an employee who is a licensed or certified health care professional, that the employee reasonably believes constitutes improper quality of patient care, or (2) is fraudulent or criminal; Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship; or Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, (2) is fraudulent or criminal, or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. §§ 34:19-3, 34:19-3(a), 34:19-3(b), 34:19-3(c); 34:19-2.

193.     To state a *prima facie* case under CEPA, a plaintiff must establish that: "(1) she reasonably believed that her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing" activity described in [CEPA]; (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003).

194.     Plaintiff reasonably believed Defendants' actions were in violation of the law.

195.     Plaintiff "blew the whistle" when he objected to his unsafe assignment, to the sexually harassing, violent and threatening conduct and actions of specific NJ Transit bus patrons, reported the individuals making his environment and that of his passengers unsafe, and reported the unlawful and violative conduct to the NJ Department of Labor.

196.     Defendants retaliated against Plaintiff.

197.     There was a causal connection between Plaintiff's protected activity and Defendants' retaliation because the events occurred in close temporal proximity and Defendants' stated reasons for terminating Plaintiff explicitly referenced her whistleblowing activity.

198.     As a result of Defendants' CEPA violations, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to her business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

## COUNT XI
### Sex and Disability Discrimination in violation of the
### New Jersey Law Against Discrimination (NJLAD)
### N.J.S.A. 10:5-1 *et. seq.*
### *(Plaintiff v. Defendant NJ Transit)*

258.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

259.    Defendants are employers and supervisors/managers of Plaintiff.

260.    Plaintiff is a male who also has a disability, and these are protected classes as defined by the NJLAD.

261.    Defendants' actions as set forth above and incorporated herein violate the NJLAD.

262.    Defendants individually and jointly, in their individual and official capacities, took adverse action against plaintiff or allowed others to take adverse action against plaintiff based on Plaintiff's membership in one or more of these protected classes.

263.    At all pertinent times, the discriminatory actions complained of herein occurred in New Jersey and Plaintiff was unlawfully discriminated against on the basis of Plaintiff's membership in one or more of these protected classes.

264.    As a direct and proximate result of Defendants' discrimination, retaliation, and unlawful termination of Plaintiff's employment in violation of NJLAD's prohibitions against race discrimination Plaintiff has suffered and continues to suffer emotional and financial harm including loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

265.    Defendants' actions were willful and wanton and thus require the imposition of punitive damages to the extent permissible by law.

266.     Alternatively, Defendants' actions were motivated by the foregoing discrimination and retaliation and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

**COUNT XII**
**Hostile Work Environment in Violation of the**
**New Jersey Law Against Discrimination (NJLAD)**
**N.J.S.A. 10:5-1 *et. seq*.**
***(Plaintiff v. Defendant NJ Transit)***

267.     Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

268.     Defendants are employers and supervisors/managers of Plaintiff.

269.     Defendant NJ Transit and Defendant Tirado in her capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of his employment on the basis of Plaintiff's sex, disability, FMLA status and other protected categories as enumerated herein.

270.     Defendant NJ Transit delegated to Defendant Tirado the authority to control Plaintiff's work environment, and Tirado abused that authority to create a hostile work environment.

271.     Moreover, Defendant NJ Transit's failure to act to prevent Plaintiff from being sexually harassed, discriminated against, and threatened by NJ Transit bus patrons, despite Plaintiff repeatedly reporting same, incurring disabling injuries and medical conditions because of same, and resisting NJ Transit's failure to deter or prevent the discrimination and harassment Plaintiff was experiencing created a hostile work environment.

272.     At all times material, Defendant Tirado's intentional, discrimination based on Plaintiff's protected classes was not welcomed by Plaintiff.

273.    At all times material, the intentional, discrimination based on Plaintiff's membership in protected categories by Defendants was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

274.    At all times material, Plaintiff believed Plaintiff's work environment to be hostile or abusive as a result of Defendants' discriminatory conduct on the basis of Plaintiff's membership in one or more protected classes.

275.    The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

276.    Defendants provided a futile avenue for complaint.

277.    Defendants retaliated against Plaintiff for Plaintiff's complaints.

278.    Defendants acted upon a continuing course of conduct.

279.    Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally and state-protected civil rights.

280.    As a result of Defendants' violations of NJLAD, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT XIII
### Retaliation in violation of the
### New Jersey Law Against Discrimination (NJLAD)
### N.J.S.A. 10:5-1 *et. seq.*
### *(Plaintiff v. Defendant NJ Transit)*

281.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

282.    Plaintiffs complaints and requests that defendants remedy the previously-described unlawful discrimination and harassment were responded to in a retaliatory manner, subjecting plaintiff to further discrimination and unreasonable and unnecessary exposure to a harassing, discriminatory and hostile workplace environment in violation of the Law Against Discrimination, N.J .S.A. 10:5-1, *et. seq.*

283.    Defendants' retaliatory and illegal conduct towards Plaintiff was in direct violation of the protections and guarantees of the Law Against Discrimination, N.J.S.A. 10: 5-1, *et. seq.*

284.    Defendants' retaliatory and illegal conduct towards Plaintiff violated the Law Against Discrimination's clear mandate of public policy that discrimination and harassment based upon the race of an employee is a cancer upon society that must be eradicated, and that individuals have a statutory right to freedom from such harassment and discrimination without retaliation from either their employers or co-employees.

285.    As a direct and proximate result of Defendants' retaliation and unlawful termination of Plaintiff's employment in violation of  NJLAD's prohibitions against discrimination Plaintiff has suffered and continues to suffer emotional and financial harm including loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

286.    Defendants' actions were willful and wanton and thus require the imposition of punitive damages.

287.    Alternatively, Defendants' actions were motivated by the foregoing discrimination and retaliation and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

**COUNT XIX**
**Aiding and Abetting in violation of the**
**New Jersey Law Against Discrimination (NJLAD)**
**N.J.S.A. 10:5-1 *et. seq.***
*(Plaintiff v. Defendant Tirado)*

287.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

288.    NJLAD provides in relevant part:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
...
(e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.

N.J.S.A. 10:5-12(e).

289.    Defendant Tirado has unlawfully discriminated against Plaintiff because of Plaintiff's sex and disability in furtherance of her own ends as well as Defendant NJ Transit's discrimination of Plaintiff.

290.    Defendant Tirado has unlawfully retaliated against Plaintiff because of Plaintiff's protected activity.

291.    Defendant Tirado was generally aware of her role in the overall illegal, unlawful, and/or tortuous activity.

292.    Defendant Tirado knowingly and substantially assisted Defendant NJ Transit in discriminating against and retaliating against Plaintiff in addition to engaging in discriminatory conduct of her own.

## COUNT XX
### Intentional Infliction of Emotional Distress (IIED)
#### *(Plaintiff v. Defendant Tirado)*

293.    Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

294.    Plaintiff brings this claim against Defendant Tirado in her individual capacity for intentional infliction of emotional distress ("IIED").

295.    To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. *Hooten v. Penna. College of Optometry*, 601 F.Supp. 1155 (E.D.Pa.1984); *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa.Super. 1997); Restatement (Second) of Torts § 46.

296.    Defendant Tirado engaged in intentional and reckless harassment and inflicted emotional injury on Plaintiff by making lewd comments about Plaintiff's wife, Plaintiff's health, Plaintiff's sexual activities, and Plaintiff's disability.

297.    Defendant Tirado abused Plaintiff and treated him in a demeaning and inferior manner, which no reasonable person could be expected to endure.

298.    As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress, resulting in bodily and mental injury, and damages, including punitive damages, to be determined at trial.

## COUNT XXI
### DECLARATORY RELIEF ALLEGATIONS
#### *(Plaintiff v. All Defendants)*

299.    Plaintiff incorporates by reference each and every paragraph and allegation made in the above paragraphs of this complaint.

300.     A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties.

301.     Plaintiff contends Defendant violated his rights as complained of herein.

302.     Plaintiff is informed and believes that Defendant denies these allegations.

303.     Declaratory relief is therefore necessary and appropriate.

## COUNT XII
## INJUNCTIVE RELIEF ALLEGATIONS
### *(Plaintiff v. All Defendants)*

304.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

305.     No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

306.     If this Court does not grant the injunctive relief sought, Plaintiff will be irreparably harmed.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by this complaint.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims, his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll

records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **PRAYER FOR RELIEF**

Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

**WHEREFORE**, Plaintiff demands judgment against the named Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and lost wages, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, interest and disbursements of action, and for all other relief available under the law or at equity as well as a judicial declaration of the rights and duties of the respective parties and an order enjoining Defendant from engaging in the unlawful acts complained of herein.

Respectfully submitted,

Date: <u>February 11, 2025</u>                    **DEREK SMITH LAW GROUP, PLLC**

By: <u>*/s/ Timothy J. Prol, Esq.*</u>
Timothy J. Prol, Esq.
1628 Pine Street
Philadelphia, Pennsylvania 19103
Phone: (215) 391-4790
tim@dereksmithlaw.com
*Attorneys for Plaintiff, John Githens*